UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>$1,071,251.44 OF FUNDS ASSOCIATED<br>WITH MINGZHENG INTERNATIONAL<br>TRADING LIMITED;<br><br>$347,446.93 OF FUNDS ASSOCIATED<br>WITH MINGZHENG INTERNATIONAL<br>TRADING LIMITED;<br><br>$42,632.00 OF FUNDS ASSOCIATED<br>WITH MINGZHENG INTERNATIONAL<br>TRADING LIMITED;<br><br>$30,258.00 OF FUNDS ASSOCIATED<br>WITH MINGZHENG INTERNATIONAL<br>TRADING LIMITED;<br><br>$253,638.25 OF FUNDS ASSOCIATED<br>WITH MINGZHENG INTERNATIONAL<br>TRADING LIMITED; AND<br><br>$157,749.07 OF FUNDS ASSOCIATED<br>WITH MINGZHENG INTERNATIONAL<br>TRADING LIMITED;<br><br>      Defendants. | Case No. 17-cv-01166 (KBJ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
ENTRY OF DEFAULT JUDGMENT AND ORDER OF FORFEITURE**

On June 14, 2017, the plaintiff United States government commenced this civil forfeiture

action *in rem* against the defendant properties pursuant to 18 U.S.C. § 981(a)(1)(C), as property

that constitutes or is derived from proceeds traceable to violations of the International Emergency

Economic Powers Act ("IEEPA"), codified at 50 U.S.C. § 1701 *et seq*.  The government also

1

alleged that the defendant properties were subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in money laundering transactions and attempted money laundering transactions, in violation of 18 U.S.C. §§ 1956(a)(2)(A), (h), and as assets traceable to such property. *Id.*

The defendant properties consist of $1,902,975.69 associated with Mingzheng International Trading Limited (Mingzheng), further described as: $1,071,251.44 of funds associated with Mingzheng; $347,446.93 of funds associated with Mingzheng; $42,632.00 of funds associated with Mingzheng; $30,258.00 of funds associated with Mingzheng; $253,638.25 of funds associated with Mingzheng; and $157,749.07 of funds associated with Mingzheng, all of which are being held at six U.S. financial institutions (collectively "Defendant Funds).

## FACTUAL BACKGROUND

This *in rem* forfeiture action arises out of an investigation by the Federal Bureau of Investigation ("FBI") of a scheme by Mingzheng, a front company incorporated in Hong Kong, to launder U.S. dollars on behalf of sanctioned North Korean entities.  North Korea has used the state-run Foreign Trade Bank ("FTB") to work with a host of front companies in order to access the U.S. financial system and evade the U.S. sanctions imposed on FTB and its sanctioned affiliates.  In particular, Mingzheng acted as a front company to make illicit U.S. dollar payments on behalf of a covert foreign branch of FTB, which is otherwise barred from making such U.S. dollar payments.  Consistent with front companies, Mingzheng had no website or purported business purpose in corporate documents.  Between October and November 2015, Mingzheng was a counterparty to 20 illicit wire transfers in U.S. dollars, totaling $1,902,976.00, which were routed through U.S. correspondent banking accounts, and which comprise the Defendant Funds.

In March 2013, the U.S. Department of Treasury's Office of Foreign Assets Control (OFAC) designated FTB.  The designation noted that FTB was North Korea's primary foreign exchange bank, and was facilitating transactions on behalf of North Korea's weapons of mass destruction proliferation network.  On June 29, 2017, OFAC designated Sun Wei, who incorporated Mingzheng in Hong Kong.  The designation noted that Sun Wei has been closely aligned with FTB in establishing and running a cover company (i.e., Mingzheng) on behalf of FTB.  On August 22, 2017, OFAC designated Mingzheng for acting as a front company for FTB. The designation noted that Mingzheng had provided financial services to FTB by, among other things, conducting U.S.-dollar denominated transactions.  On September 26, 2017, OFAC designated Kim Tong Chol, the owner of Mingzheng, for acting as FTB representative in Shenyang, China.

Analysis of Mingzheng's financial transactions determined that A) Mingzheng's business documents and payment patterns were very similar to other known front companies used to help sanctioned North Korean banks circumvent sanctions, and B) Mingzheng transacted multiple payments to known North Korean procurement facilitators/agents through 2015.

*Facts Supporting Forfeiture*

Mingzheng bore the hallmarks of an FTB front company.  Mingzheng had no website, and gave no purported business purpose in corporate documents.  A search of international wires reveals that it made U.S. dollar payments for products in totally unrelated industries.  Sun Wei registered Mingzheng on April 10, 2012 at RM A30 9/F Silvercorp International Tower 707-713 Nathan Road, Mongkok, Kowloon, Hong Kong.  This address is used by dozens of companies who do not appear to have actual office space in the building.  This is consistent with how front companies are registered.

Two reliable confidential sources have independently revealed that Mingzheng had laundered U.S. dollar payments on behalf of North Korea entities – in particular, FTB. This is consistent with how North Korea uses front companies to evade sanctions and procure items in U.S. dollars to sustain its proliferation program and economy.

The first reliable confidential source (CS-1) revealed that Mingzheng made illicit U.S. dollar payments directly for the benefit of the North Korean government between January 2012 and January 2015.

The second reliable confidential source (CS-2) confirmed that FTB has used Mingzheng to launder U.S. dollar payments. CS-2 revealed that Mingzheng acted as a front company for a covert branch of FTB in Shenyang, China. CS-2 revealed this branch was operated by Kim Tong Chol, who has historically been tied to FTB, and who, as noted above, operated Mingzheng.

This practice is consistent with the findings of the Panel of Experts as to how North Korean financial institutions have been able to evade sanctions.

> Behind these illicit activities is the continued access of the Democratic People's Republic of Korea to the international banking system. Despite strengthened financial sanctions in 2016, the country's networks are adapting by using greater ingenuity in accessing formal banking channels, as well as bulk cash and gold transfers. *Banks of the Democratic People's Republic of Korea maintain correspondent bank accounts and representative offices abroad* and partner with foreign companies in joint ventures. Banks and designated entities of the Democratic People's Republic of Korea make use of broad interwoven networks to undertake procurement and banking activity. *Their ability to conceal financial activity by using foreign nationals and entities* allows them to continue to transact through top global financial centres.

2017 Report of the Panel of Experts, at 1 (emphasis added).

CS-2 further indicated that payment instructions in international wires sent by Mingzheng contained coded reference numbers used by FTB. These coded reference numbers reflect that

Mingzheng was making U.S. dollar payments on behalf of FTB, which FTB was otherwise barred from doing.

CS-2 provided information tying FTB to the wiring of the Defendant Funds.  From on or around October 19, 2015, to on or around November 18, 2015, Mingzheng sent or received a total of 20 wire transfers, which transited through the U.S. financial system through the use of correspondent U.S. banks, and represent the Defendant Funds.  The Defendant Funds include 13 outgoing wires, totaling $1,349,258.16, in which Mingzheng was listed as the remitter, and seven incoming wires, totaling $553,717.53, in which Mingzheng was listed as the beneficiary. The details of these 20 wires, totaling $1,902,975.69, are provided in the table below. Three different Mingzheng accounts were involved with the transactions identified below including China Merchants Bank ("CMB") account ending in 2808, Bank of Communications ("BOC") account ending in 3100, and Shanghai Pudong Development Bank ("SPDB") account ending in 6150.

**TABLE 1: Illicit Mingzheng Wires on Behalf of FTB that Comprise Defendant Funds**

| # | Date | Wire Amount | Party Sending Wire | Party Receiving Wire |
|---|------|-------------|--------------------|----------------------|
| 1 | 10/19/2015 | $9,932.00 | Mingzheng (SPDB) | Counterparty 1 |
| 2 | 10/19/2015 | $9,742.79 | Mingzheng (BOC) | Counterparty 2 |
| 3 | 10/20/2015 | $162,018.00 | Counterparty 3 | Mingzheng (SPDB) |
| 4 | 10/22/2015 | $96,345.42 | Mingzheng (SPDB) | Counterparty 4 |
| 5 | 10/23/2015 | $9,945.00 | Mingzheng (BOC) | Counterparty 1 |
| 6 | 10/28/2015 | $24,932.00 | Mingzheng (CMB) | Counterparty 1 |
| 7 | 10/29/2015 | $199,982.00 | Mingzheng (CMB) | Counterparty 5 |
| 8 | 10/30/2015 | $79,151.51 | Mingzheng (CMB) | Counterparty 4 |
| 9 | 11/2/2015. | $42,632.00 | Mingzheng (SPDB) | Counterparty 6 |

| # | Date | Wire Amount | Party Sending Wire | Party Receiving Wire |
|---|------|-------------|--------------------|--------------------|
| 10 | 11/2/2015 | $174,982.00 | Mingzheng (CMB) | Counterparty 7 |
| 11 | 11/4/2015 | $5,326.00 | Mingzheng (CMB) | Counterparty 8 |
| 12 | 11/5/2015 | $205,536.23 | Mingzheng (CMB) | Counterparty 9 |
| 13 | 11/5/2015 | $295,769.21 | Mingzheng (CMB) | Counterparty 10 |
| 14 | 11/6/2015 | $194,982.00 | Mingzheng (CMB) | Counterparty 7 |
| 15 | 11/6/2015 | $140,000.00 | Counterparty 11 | Mingzheng (SPDB) |
| 16 | 11/12/2015 | $45,000.00 | Counterparty 12 | Mingzheng (SPDB) |
| 17 | 11/17/2015 | $57,749.07 | Counterparty 13 | Mingzheng (SPDB) |
| 18 | 11/17/2015 | $100,000.00 | Counterparty 13 | Mingzheng (SPDB) |
| 19 | 11/17/2015 | $41,822.04 | Counterparty 14 | Mingzheng (BOC) |
| 20 | 11/18/2015 | $7,128.42 | Counterparty 14 | Mingzheng (BOC) |

These U.S. dollar payments, which cleared through U.S. correspondent banking accounts, violated U.S. law, because Mingzheng was surreptitiously making them on behalf of FTB, whose designation precluded such transactions.

A search for other financial transactions related to Mingzheng revealed that it engaged in millions of dollars of transactions with companies that were subsequently designated for North Korean sanctions violations, to include Chinese telecommunication company ZTE Corporation ("ZTE"), which pled guilty to U.S sanction violations in March 2017, and Dandong Hongxiang and related front companies, which OFAC designated on September 26, 2016 for having ties to the government of North Korea's weapons of mass destruction proliferation efforts.

The Defendant Funds are subject to forfeiture, as Mingzheng failed to seek a license from OFAC, which is located in Washington, D.C., while engaging in transactions on behalf of, and for

the benefit of FTB and other designated North Korean entities.  The international wiring of U.S. dollars as part of the above identified transactions further violated U.S. money laundering laws.

## PLAINTFF HAS SATISFIED NOTICE OBLIGATIONS

On June 14, 2017, the government filed its Verified Complaint for Forfeiture *In Rem*. *See* ECF 1.  The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") govern civil forfeiture actions *in rem* arising from a federal statute. *See* Supplemental Rule A(1)(B). The Federal Rules of Civil Procedure also apply except to the extent they are inconsistent with the Supplemental Rules. *See* Supp. Rule A(2). Supplemental Rule G(4) governs the process by which the government must serve notice of the complaint. Notice is required to the public via publication, as well as to potential claimants via direct notice.

Publication

On September 25, 2017, the government began publication by posting notice on www.forfeiture.gov, an official internet government forfeiture site.  *See* ECF 4.  Notice was posted on this site for 30 consecutive days.  Publication ended on October 24, 2017.  Thus, claims based on publication were due by November 23, 2017.  *See* Supp. Rule G(5)(a)(ii).  No party filed a claim, and the time to do so has since expired.

Direct Notice

Supplemental Rule G also requires that the government send direct notice "to any person who reasonably appears to be a potential claimant on the facts known to the government." Supp. Rule G(4)(b)(i).  The notice must be sent by means "reasonably calculated to reach the potential claimant." Supp. Rule G(4)(b)(i)(A).

The government identified potential claimants in the People's Republic of China, the United Kingdom, and Switzerland.[1]  The government subsequently engaged with U.S. law enforcement officials at the respective U.S. embassies in these countries to effect service consistent with each foreign country's laws.  The United Kingdom and China permitted direct mail service.  The government located contact information for the potential claimants from the financial records gathered in the investigation.  The government sent notice via international package service to the parties in these countries on July 19, 2017 (Counterparties 1 through 13) and August 9, 2017 (Mingzheng).  These potential claimants who received direct notice had to file a verified claim with this Court within 35 days of the service of direct notice, that is, no later than August 23, 2017 for Counterparties 1 through 13, and September 13, 2017 for Mingzheng.

---

[1]     The government sent direct notice to all parties identified in Table 1; however, direct notice was only required to the parties in the "Party Sending Wire" category, as the parties in the "Party Receiving Wire" category are merely unsecured creditors.  Unsecured creditors retain no legal interest in forfeitable property, and thus lack standing to intervene in a forfeiture actions. *See United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Chawla)*, 46 F.3d 1185, 1191 (D.C. Cir. 1995) (bank depositors do not have legal interest in funds in bank's correspondent accounts); *see also United States v. Watkins*, 320 F.3d 1279, 1283-84 (11th Cir. 2003) (holding that unsecured creditors lack standing to contest the forfeiture in the ancillary proceedings because they had no interest in the particular assets subject to forfeiture); *United States v. Madoff*, 2012 WL 1142292, * 4 (S.D.N.Y. Apr. 3, 2012) (explaining why unsecured creditors lack standing to file claims).

On or about November 13, 2017, the government sent a translated Mutual Legal Assistance Treaty request to Swiss authorities asking for delivery of a notice packet to the potential claimant in Switzerland (Counterparty 14).  Swiss authorities provided direct notice to the last remaining potential claimant on or about December 6, 2017.  This potential claimant had to file a verified claim with this Court within 35 days of the service of direct notice, that is, no later than January 10, 2018.

The deadline to file a claim based on direct notice has passed without any of these parties filing a claim.

"Reasonable notice" requires only that the government attempt to provide actual notice, but it does not require that the government demonstrate that the notice was received.  *See Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005).  Thus, the government has taken the requisite steps to complete direct notice.  *See United States v. Funds Up to & including the Amount of $56,634 in U.S. Currency on Deposit in Banesco Int'l, Panama*, 79 F. Supp. 3d 112, 114 (D.D.C. 2015) (notice was adequate where government attempted, but was unable, to obtain the account holders' contact information, and thus, could only rely on posting public notice of the forfeiture action on the government's forfeiture website); *see* also *Hammel v. U.S. Dep't of Justice, Drug Enf't Admin.*, No. 2:12-cv-02932, 2013 WL 1363861, at *3 (D.S.C. Apr. 3, 2013) (mailing of notice to two known  addresses and subsequently gave notice by publication in a national news publication is sufficient notice); *Folks v. Drug Enf't Admin.,* No. 05–389, 2006 WL 3096687, at *2 (W.D.N.C. Oct. 25, 2006) (finding notice sufficient when, after notice sent to only address government had on file went unclaimed, because government also gave notice by publication). Where "the government attempted to provide notice and heard nothing back indicating that anything had gone awry, courts have found the government's efforts comply with due process."

*Lewis v. United States*, No. 14-cv-496, 2014 WL 6065538, at *6 (S.D. Cal. Nov. 3, 2014) (citing *Jones v. Flowers,* 547 U.S. 220, 226 (2006)).

In fact, the rule states that, "[a] potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." Supp. Rule G(4)(b)(iv).   The present action was the subject of much international press coverage, creating a reasonable inference that the potential claimants had actual notice of the forfeiture action.   *See e.g.*, https://www.reuters.com/article/us-northkorea-usa-sanctions/u-s-accuses-chinese-company-of-money-laundering-for-north-korea-idUSKBN19707E.

## ENTRY OF DEFAULT IS APPROPRIATE

On January 31, 2018, the Clerk of the Court entered Default in this matter.  *See* ECF 9-14. Upon entry of default by the clerk of the court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint."  *Int'l Painters & Allied Trades Indus. Pension Fund v. R. W. Amrine Drywall Co., Inc.*, 239 F.Supp.2d 26, 30 (D.D.C. 2002) (citation omitted).  As a result, the entry of a Default Judgment and an Order of Forfeiture against the Defendant Funds is supported under the circumstances of this case.  *See United States v. 8 Gilcrease Lane*, 638 F.3d 297, 299 (D.C. Cir. 2011) (upholding district court's order for default judgment and final order of forfeiture based on the ground that no claimants contesting forfeiture remained in the case). Indeed, the Clerk of the Court "must enter" default when there has been a failure to plead timely or otherwise defend an action within the time fixed by law.  Fed. R. Civ. P. Rule 55(a).  Moreover, the Civil Asset Forfeiture Reform Act of 2000, codified at 18 U.S.C. § 983(a)(4)(A), mandates the filing of a claim within 30 days of the service of the government's complaint.

Whenever a party seeks default judgment in a case that is not a sum certain from a defendant, application for judgment by default shall be made to the Court, and such judgment may be entered by the Court so long as the defaulted party is not an infant or otherwise incompetent. *See* FED. R. CIV. P. 55(b); *DirecTV, Inc. v. Arnold*, 392 F. Supp. 2d 415 (N.D.N.Y. 2005); *Canady v. Erbe Elektromedizin GMBH*, 307 F. Supp. 2d 2, 8-9 (D.D.C. 2004); *United States v. Gant*, 268 F. Supp. 2d 29, 32 (D.D.C. 2003). The Defendant Funds are inanimate items of personal property, so they are neither an infant, nor incompetent.

Accordingly, upon consideration of the record in this case, including a showing of compliance with applicable rules regarding service of process and notice by publication, and the default having been entered by the Clerk of the Court, it is respectfully requested that this motion be granted. *See 8 Gilcrease Lane*, 638 F.3d at 299 (upholding district court's order for default judgment and final order of forfeiture, because there were no valid claims); *United States v. $9,928.00 in U.S. Currency*, 10-cv-1728, 2012 WL 1004873, at *1 (D.D.C. Mar. 27, 2012) (ordering default where government submitted affidavit certifying that it gave appropriate notice and that no claims were filed); *United States v. $4,620 in U.S. Currency*, 779 F. Supp. 2d 65, 67 (D.D.C. 2011) (ordering default where court struck sole claimant's claim, leaving no claimants to the defendant funds). A proposed Default Judgment and Order of Forfeiture is attached to the motion.

***

**WHEREFORE**, the United States respectfully submits this Memorandum of Law in support of its Motion to Enter Default Judgment and enter an Order of Forfeiture.

Respectfully submitted,

JESSIE K. LIU,
UNITED STATES ATTORNEY

By: _____/s/_____
Zia M. Faruqui, D.C. Bar No. 494990
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7117
zia.faruqui@usdoj.gov